IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHANDRA KISHOR,

     Plaintiff,                       No. 2:07-0980-FCD-JFM (PC)

    vs.

MR. NAKU, et al.,

     Defendants.               FINDINGS & RECOMMENDATIONS

                              /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on claims against four defendants named in plaintiff's amended complaint, filed October 16, 2007. Plaintiff claims that defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs. Defendants Dr. Naku and Mrs. Naku (the Naku defendants) have filed a motion for terminating and monetary sanctions due to plaintiff's failure to respond to written discovery requests after being ordered to do so by this court. The Naku defendants have also filed a motion for summary judgment, as have defendants Keller and Corioso.[1]

/////

---

[1] The Naku defendants are represented by Williams & Associates, while defendants Keller and Corioso are represented by the Attorney General of California.

I. <u>Summary Judgment</u>

The Naku defendants seek summary judgment on several grounds, including (1) plaintiff's failure to exhaust administrative remedies prior to suit; (2) an absence of evidence that they were deliberately indifferent to plaintiff's serious medical needs; (3) their entitlement to qualified immunity; and (4) as to plaintiff's state law claim, that plaintiff failed to comply with the Government Claims Act and there is no triable issue of fact as to whether either defendants was negligent. Defendants Corioso and Keller seek summary judgment on the ground that neither was deliberately indifferent to plaintiff's serious medical needs nor otherwise violated plaintiff's constitutional rights.

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as

/////

1  whatever is before the district court demonstrates that the standard for entry of summary
2  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.
3        If the moving party meets its initial responsibility, the burden then shifts to the
4  opposing party to establish that a genuine issue as to any material fact actually does exist. See
5  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
6  establish the existence of this factual dispute, the opposing party may not rely upon the
7  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
8  form of affidavits, and/or admissible discovery material, in support of its contention that the
9  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
10 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
11 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
12 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
13 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
14 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
15 1436 (9th Cir. 1987).
16       In the endeavor to establish the existence of a factual dispute, the opposing party
17 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
18 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
19 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
20 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
21 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
22 committee's note on 1963 amendments).
23       In resolving the summary judgment motion, the court examines the pleadings,
24 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
25 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed. See Anderson,
26 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On January 25, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

A.  The Naku Defendants

1.  Exhaustion of Administrative Remedies

Section 1997e(a) of Title 42 of the United States Code requires prison inmates to exhaust available administrative remedies prior to filing a civil rights action in federal court.  42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001).  The failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proved by defendants. Jones v. Bock, 549 U.S. 199, 212-216 (2007).[2]  The "proper remedy" for failure to exhaust administrative remedies "is dismissal . . . without prejudice.  Wyatt, 315 F.3d at 1119.

---

[2] Following the decision in Jones, there has been some discussion in the lower courts about whether the holding in Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) concerning the proper procedure for raising the defense has been implicitly overruled by Jones.  See, e.g., Jensen v. Knowles, 621 F.Supp.2d 921 (E.D.Cal. 2008) (discussing whether holding in Jones requires defense to be raised on motion for summary judgment, rather than Rule 12(b) motion, thereby precluding resolution by the court of factual disputes relevant to the defense and concluding that Wyatt is still good law); that failure to exhaust administrative remedies is a matter in abatement that must be raised in an unenumerated Rule 12(b) motion.  In the instant case, there are no factual disputes concerning issues relevant to resolution of the exhaustion defense.

> California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal.Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c). [Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] Id. § 3084.5(e)(1)-(2).

Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005.)

Plaintiff's claim against defendant Mrs. Naku arises from her alleged failure, eight separate times, to refill for plaintiff a prescribed cholesterol medication, Lipitor. Amended Complaint, filed October 16, 2007, at 5-6. Plaintiff's claim against defendant Dr. Naku arises from his decision on October 21, 2005, to discontinue the prescribed Lipitor. Id. at 7. Plaintiff alleges that these events ultimately caused him to suffer a heart attack on August 1, 2006. Id.[3]

The events at bar occurred at California State Prison-Solano (CSP-Solano). See Amended Complaint, at 4. In support of their motion for summary judgment, the Naku defendants have presented evidence that, as of November 6, 2008, plaintiff had submitted ten inmate grievances while incarcerated at CSP-Solano. Declaration of Norman T. Moore in Support of Foladshade Naku and Binoye Naku, M.D.'s Motion for Summary Judgment, filed March 20, 2009, at ¶ 5. Only two of those grievances, both of which involved medical issues, "advanced beyond the informal stage and received a tracking number" and "[n]either of those grievances was appealed beyond the first level of review." Id. The second of these concerned

---

[3] Plaintiff also alleges generally that there was a 25 minute delay in summoning emergency medical care at the time of his heart attack, that Naku was told that VacaValley Hospital "did not want" plaintiff, that it took defendant Naku "25 minutes to convince" officials at VacaValley Hospital that plaintiff was having a heart attack, and that he does not know "if it was CDC Facility's Hospital's negligence it was a malicious attempt to delay and disregard the care by Naku, or someone coersed [sic] at the hospital." Amended Complaint, at 9.

plaintiff's alleged problem in getting his prescription for Lipitor refilled. Id. at ¶ 9. It was received at the informal level in May 2006, and was not appealed "beyond the first formal level of review." Id.

Plaintiff has presented no evidence to contravene the Naku defendants' showing that he failed to exhaust administrative remedies with respect to his claims against them prior to filing this action. Accordingly, those claims must be dismissed without prejudice.

Since plaintiff's claims against the Naku defendants must be dismissed for failure to exhaust administrative remedies, the court will not reach the remaining arguments tendered by these defendants on their motion for summary judgment.

    B.  <u>Defendants Keller and Corioso</u>

Plaintiff's claim against defendant Corioso arises from allegations that defendant Corioso delayed plaintiff's inmate grievance concerning the alleged denial of Lipitor for 50 days and "then made Naku sign off lies on" the day of plaintiff's heart attack, and that he lost another inmate grievance filed by plaintiff in January 2006. Amended Complaint, at 5. Plaintiff's claim against defendant Keller arises from the allegation that defendant Keller "had no oxygen" to provide to plaintiff when he suffered the heart attack on August 1, 2006.

Defendant Corioso seeks summary judgment on the grounds that he was not responsible for responding to plaintiff's grievances concerning his medical issues, and that he did not receive any of the grievances plaintiff claims to have submitted based on the alleged denial of Lipitor. In support of the motion, defendant Corioso has presented his sworn declaration, in which he attests that he "responded to non-medical second-level appeals only in 2006," that second-level appeals concerning medical issues were sent to medical staff at CSP-Solano, and that he had "no involvement or knowledge of any second-level appeals concerning medical issues filed by [plaintiff] in 2006." Declaration of Mark Corioso in Support of Motion for Summary Judgment, filed March 27, 2009, at ¶¶ 5-6.

/////

At his deposition, plaintiff testified that he named defendant Corioso as a defendant in this action because plaintiff "must have" directed an inmate grievance about the events at bar to the appeals coordinator, plaintiff believes that defendant Corioso was the appeals coordinator at the time, and defendant Corioso had signed off on another grievance filed by plaintiff. Ex. A to Declaration of James W. Walter in Support of Motion for Summary Judgment, filed March 27, 2009, Deposition of Chandra Kishor, at 65-67. This testimony is insufficient to raise a triable issue of material fact as to whether defendant Corioso had any involvement in any inmate grievance submitted by plaintiff in connection with the events at bar, specifically, his alleged difficulties with getting his prescription for Lipitor refilled. Defendant Corioso has presented undisputed evidence that he had no involvement in any grievance filed by plaintiff in 2006 concerning medical issues.[4] Defendant Corioso is entitled to summary judgment.

As noted above, plaintiff's claim against defendant Keller arises from the allegation that defendant Keller had no oxygen available when plaintiff had his heart attack on August 1, 2006. Defendant Keller seeks summary judgment on the ground that he did not act with deliberate indifference to plaintiff's serious medical needs on the day plaintiff had his heart attack. In support of the motion, defendant Keller presents the following sworn testimony in his declaration. On August 1, 2006, defendant Keller was a medical technical assistant (MTA) at CSP-Solano assigned to work at the Annex Clinic. Declaration of John W. Keller, Jr. in Support of Motion for Summary Judgment, filed March 27, 2009, at ¶ 3. Emergency medical equipment was not kept at the Annex Clinic at that time. Id. That day, defendant Dr. Naku asked defendant Keller to provide plaintiff with oxygen when plaintiff was at the Annex Clinic experiencing chest pain. Id. at ¶ 6. Defendant Keller initially told defendant Naku that oxygen was not available at the Annex Clinic. Id. A few minutes later, defendant Naku repeated the inquiry and defendant

---

[4] According to the amended complaint, plaintiff's first inmate grievance concerning these issues was submitted on January 25, 2006. Amended Complaint, at 6.

7

Keller again told him that there was no oxygen at the Annex Clinic. Id. Defendant Keller also told defendant Naku that plaintiff would have to be taken to the prison's Triage Treatment Area if he required oxygen. Id. at ¶ 6. Immediately thereafter Dr. Naku ordered plaintiff transported to an emergency room by ambulance. Id. at ¶ 7. Plaintiff has not presented any evidence to dispute the facts tendered by defendant Keller.

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under § 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.

There is no evidence that defendant Keller acted with deliberate indifference to plaintiff's serious medical needs in connection with the events that occurred in the Annex Clinic on August 1, 2006. Defendant Keller is entitled to summary judgment.

Plaintiff has also raised state law claims. Pursuant to 28 U.S.C. § 1367(c), the district court may decline to exercise supplemental jurisdiction over all state law claims where, as here, all of the claims over which the district court has jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). Accordingly, plaintiff's state law claims should be dismissed without prejudice.

II. Motion for Terminating and Monetary Sanctions

The Naku defendants have also moved pursuant to Fed. R. Civ. P. 37 for terminating and monetary sanctions due to plaintiff's failure to respond to written discovery requests propounded by said defendants after being ordered to so by this court. The record shows that plaintiff's claims against the Naku defendants must be dismissed for failure to exhaust administrative remedies, and it appears this defense could have been resolved by Rule 12(b)

motion at an early stage of these proceedings and without the discovery responses at issue in the motion. For this reason, while the court does not countenance plaintiff's apparently willful failure to comply with this court's order, the court will not award monetary sanctions to the Naku defendants. As noted above, the court will recommend dismissal of plaintff's claims against the Naku defendants for failure to exhaust administrative remedies. For that reason, the court will recommend that defendants' motion to dismiss this action as a sanction be denied.

In accordance with the above, IT IS HEREBY ORDERED that the Naku defendants' March 12, 2009 motion for monetary sanctions is denied; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' March 12, 2009 motion to dismiss this action as a sanction be denied;

2. The Naku defendants' March 20, 2009 motion for summary judgment be granted on the ground that plaintiff failed to exhaust administrative remedies with respect to his claims against said defendants prior to suit;

3. Plaintiff's claims against the Naku defendants be dismissed without prejudice;

4. The March 27, 2009 motion of defendants Keller and Corioso for summary judgment be granted as to plaintiff's § 1983 claims against said defendants;

5. The district court decline to exercise supplemental jurisdiction against the state law claims raised in plaintiff's amended complaint; and

6. Plaintiff's state law claims be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

/////

failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 29, 2009.

                                          UNITED STATES MAGISTRATE JUDGE

12
kish0980.57

10